Magistrate Judge Taryn Merkl

United States District Court for the

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

FILED
in the Clerk's Office
U.S. District Court, EDNY
May 24, 2022
11:01AM
Brooklyn Pro Se Office via Box.com

Re: Samuel v. Aron 19-cv-05229 (MKB)(TAM)

Dear Judge Merkl

    I incorrectly filed a Motion for Default Judgment when I should have filed a Motion to Enforce Settlement. May you please accept this proposed Motion to Enforce Settlement Agreement (Exhibit A)? Thank you.

/s/Christopher Samuel

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

Christopher Samuel,

                                                        Plaintiff, Case No. 19-cv-05229(MKB)(TM)

        -against- **[PROPOSED] MOTION TO ENFORCE SETTLEMENT**
            Eve Aron, **AGREEMENT** Defendant.

---------------------------------------------------------------X

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that upon the attached Declaration of Christopher Samuel, dated May 24, 2022 and the Memorandum of Law, dated May 24, 2022, and all other proceedings had herein, at a date and time to be determined by the Court, the undersigned will move this Court, at 225 Cadman Plaza East, Brooklyn, New York 11201, for a motion to enforce settlement agreement.

Please forgive my incorrect motion dated May 12, 2022, I would like to respectfully ask that you consider my correction after further evaluation.

Dated: May 24, 2022

                                                                         <u>/s/Christopher Samuel</u>

                                                                         Pro se Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

Christopher Samuel,

                                              Plaintiff, Case No. 19-cv-05229(MKB)(TM)

        -against- **DECLARATION IN SUPPORT OF MOTION TO ENFORCE**
                                                      **SETTLEMENT AGREEMENT**

Eve Aron,

        Defendant.

-----------------------------------------------------------------X

## **DECLARATION**[1]

1. I am pro se plaintiff Christopher Samuel.
2. I move for a motion to enforce settlement agreement against the Defendant Eve Aron (Exhibit B).
3. Ms. Aron with the assistance of her attorney David J. Hoffman, had agreed to pay settlement money by January 3, 2022.
4. I didn't receive a check until April 19, 2022 which subsequently bounced due to insufficient funds (Exhibit C).
5. Ms. Aron had contacted me through text of countless promises of payment until she stopped communicating after her check bounced.
6. Ms. Aron has missed every court appearance (Feb. 8, 2022, March 8, 2022, May 9, 2022) since the settled amount was agreed upon.
7. More recently, on May 14, 2022, Mr. Hoffman filed a Motion to Withdraw as Attorney for Defendant Eve Aron (Docket Nos. 39 and 40). In his Declaration, Mr. Hoffman also informed the Court that "Ms. Aron has failed to respond to my communications, has failed to complete her obligations under the settlement agreement, has failed to pay the mediator in this case and furthermore apparently attempted to pass a bad check in an effort to settle this case." Declaration of David J. Hoffman, ¶ 3.
8. Because of her failure to appear and communicate concerning her circumstances to comply with her terms of settlement agreement, I request for this Court to hold the Defendant in contempt and issue sanctions for her bad faith conduct.
9. As this Court is aware, this action originates from a contract in which the Defendant owed me $400,000 which she failed to pay. Should the Court decide not to enforce the

---

[1] This document was prepared with some assistance from the City Bar Justice Center's Federal Pro Se Legal Assistance Project.

        settlement agreement, I ask that the amount originally sought for breach of the contract be awarded to me (Exhibit D).

I affirm the foregoing under penalty of perjury.

Dated: May 24, 2022

                                                                            /s/Christopher Samuel

Case 1:19-cv-05229-MKB-TAM Document 41 Filed 05/24/22 Page 4 of 18 PageID #: 291
Exhibit B
Case 1:19-cv-05229-MKB-TAM Document 34 Filed 12/13/21 Page 1 of 1 PageID #: 260

# DAVID J. HOFFMAN
ATTORNEY AT LAW
254 W. 15TH ST. APT 2C
NEW YORK, NEW YORK 10011
TEL: (917) 701-3117
EMAIL: DJHOFFMAN@DJHOFFMANLAW.COM

December 13, 2021

Magistrate Judge Taryn Merkl
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: <u>Samuel v. Aron 19-cv-05229 (MKB)(TAM)</u>

Dear Judge Merkl:

This is the joint report of the parties in the above-referenced matter.

The parties' mediation on November 16, 2021 successfully resulted in a settlement agreement between the parties which will result in the dismissal of all claims here with prejudice; however, the agreement does provide the defendant until January 3, 2022 to make the payment necessary to implement the settlement agreement.

Very truly yours,


David J. Hoffman



I#2

ACCT#  6775809842
DATE:  04/21/2022

TD BANK NA
P O BOX 1377
LEWISTON, ME 04243-1377

800-428-7000

7  MB 01 000310 52718 H 2 C
7

CHRISTOPHER SAMUEL
282 E 35TH ST APT 411
BROOKLYN NY  11203-3933

THE FOLLOWING ITEM(S) THAT WERE DEPOSITED INTO ACCT # 6775809842 HAVE BEEN RETURNED UNPAID.  WE HAVE DEBITED YOUR ACCOUNT AS INDICATED BELOW.  AS A RESULT OF THIS ACTION, YOUR ACCOUNT IS NOW OVERDRAWN.  IF YOU HAVE ANY QUESTIONS OR CONCERNS, PLEASE CONTACT US AT THE NUMBER LISTED ABOVE.

| CHECK # | DEPOSIT DATE | CHECK AMOUNT | RETURN REASON | REFERENCE# | FEE |
|---|---|---|---|---|---|
| 154 | 04/20/2022 | 45,000.00 | FROZEN/ BLOCKED | 550184601 | 15.00 |

TOTAL RETURNED
NUMBER OF ITEM(S)      1
AMOUNT OF CHECK(S)     $45,000.00
FEE                    $15.00

PLEASE SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.      AO

**Exhibit C**



**Exhibit C**

```
4839250 8591 103 00  20220420  0000001 575272 1664
TRN DEBIT DWATSON   0.00
Brooklyn College 4839 94004 4839 0008 0036
```

**Exhibit C**

**Exhibit D**

# LOAN AGREEMENT

This Agreement (the "**Agreement**"), dated March 1, 2019, between Christopher Samuel (the "**Lender**"), an individual residing at 282 E 35th St, Brooklyn, NY 11203; and Eve Aron (the "**Borrower**"), an individual residing at 510 S. Sparks St, Burbank, CA 91506.

WHEREAS, the Lender desires to loan to the Borrower, and the Borrower desires to repay loan to the Lender; and

WHEREAS, the Lender hereby agrees to loan the Borrower EIGHTY THOUSAND DOLLARS AND NO CENTS ($80,000.00) in immediately available funds; and

WHEREAS, the Borrower hereby agrees to repay the Lender in part FIFTY THOUSAND DOLLARS AND NO CENTS ($50,000.00) over a period of six (6) weeks starting from the execution of this Agreement and in part through earnings at horse shows.

NOW, THEREFORE, in consideration of the mutual promises set forth and subject to the terms and conditions under this Agreement, the parties agree as follows:

## Article I. Definitions

**Section 1.01 Defined Terms.** As used in this Agreement, terms defined in the preamble and recitals of this Agreement have the meanings set forth therein, and the following terms have the meanings set forth below:

(a) "**Assignee**" means the Borrower's trainer, Leila Ward-Maroney, an individual associated with the Los Angeles Equestrian Center located at 480 W. Riverside Dr., Burbank, CA 91506.

(b) "**Borrower's Account**" means the bank account with the following information: Name: von Henkle Industries, Inc.

**Exhibit D**

1

Address: 13270 Kibbings Road

San Diego, CA 92130

Account No.: 733108679

Bank: Chase Bank

      6041 La Flecha

      Rancho Santa Fe, CA 92067

Routing No.: 322271627


(c) "**Consent**" means an explicit affirmation in writing.

(d) "**Diorado VDL**" means the ten-year-old gelding warmblood imported from Germany.

(e) "**Essential Provisions**" means the provisions that stipulate the core issues of this Agreement, including but not limited to Section 4.01(b).

(f) "**Farolito**" means the eight-year-old gelding warmblood imported from the Netherlands.

(g) "**Liquidated Damages**" has the meaning specified in Section 6.01.

(h) "**Lender's Account**" means the bank account with the following information: Name: Christopher Samuel

Address: 111 Ryerson St.

      Brooklyn, NY 11205

Account No.: 4287021441

Bank: TD Bank

Routing No.: 026013673

(i) "**Loan**" means a fixed loan, with an interest rate of ZERO PERCENT (0%) per annum, and a principal amount of EIGHTY THOUSAND DOLLARS AND NO CENTS ($80,000.00).

(j) "**Material Breach**" means the breach of any one of the Essential Provisions.

## Exhibit D

2

(k) "**Maybellene**" means the twelve-year-old mare warmblood imported from Holland.

(l) "**New Horse**" means the seven-year-old gelding warmblood imported from Germany into Florida in 2019.

(m) "**Notice**" has the meaning specified in Section 8.03(a).

(n) "**Old Horses**" means Maybellene, Farolito, and Diorado VDL.

### Article II. Lender's Representations and Warranties

The Lender represents and warrants the following:

**Section 2.01 Lender's Authority.** To execute this Agreement, the Lender has complete authority and legal right.

**Section 2.02 Liens.** No liens are attached to Lender's assets that would impair the execution of this Agreement.

### Article III. Borrower's Representations and Warranties

The Borrower represents and warrants the following:

**Section 3.01 Borrower's Authority.** To execute this Agreement, the Borrower has complete authority and legal right.

**Section 3.02 Insurance.** The Borrower has and guarantees the Lender valid insurance for the full value of the New Horse.

**Section 3.03 Title.** The Borrower shares FIFTY (50%) percent co-ownership in the New Horse as defined by the United States Equestrian Federation.

Exhibit D

3
## Article IV. Loan

**Section 4.01 Payment Terms.**

(a) The Lender shall wire the Loan amount into the Borrower's Account.

(b) The Borrower shall wire payments to Lender's Account:

    (i) in increments to total FIFTY THOUSAND DOLLARS AND NO CENTS ($50,000.00) over six (6) weeks starting from the execution of this Agreement;

    (ii) within SEVEN (7) business days of the Borrower receiving the earnings FIFTY (50%) percent of the earnings by the New Horse at each horse show in which the New Horse participates; and

    (iii) within SEVEN (7) business days of the Borrower receiving the earnings FIFTY (50%) percent of the earnings by the Old Horses at each horse show for the next SEVEN (7) years, beginning from the execution of this Agreement, in which the Old Horses participate.

(c) Each late payment shall be cured by the Borrower by wiring to Lender's Account TWO THOUSAND DOLLARS AND NO CENTS ($2,000.00) within SEVEN (7) business days of each due date in addition to the original payment.

**Section 4.02 Security.** There shall be no security put forth by the Borrower in this Agreement.

## Article V. Horses

**Section 5.01 Maintenance of Horse**. The Borrower shall maintain and bear all costs to maintain the health of the New Horse and Old Horses.

**Exhibit D**

4

(a) If the New Horse is sold to a third party, the Borrower shall cause to be wired to Lender's Account ONE HUNDRED (100%) percent of the New Horse purchase price within SEVEN (7) business days of purchase.

(b) If the New Horse dies or cannot participate in shows, the Borrower shall cause to be wired to Lender's Account ONE-HUNDRED-AND-FIFTY THOUSAND DOLLARS AND NO CENTS ($150,000.00) within SEVEN (7) business days of the discovery of the New Horse's condition.

(c) If the Old Horses either do not survive or cannot participate in shows for SEVEN (7) years, the Borrower shall cause to be wired to Lender's Account FIFTY (50%) percent of the amount of the Old Horses' insurance claim within SEVEN (7) business days of the Borrower's receipt of insurance claim.

(d) Each late payment shall be cured by the Borrower by wiring to Lender's Account TWO THOUSAND DOLLARS AND NO CENTS ($2,000.00) within SEVEN (7) business days of each due date in addition to the original payment.

### Article VI. Termination Provisions

**Section 6.01 Grounds for Termination.** A breach of this Agreement does not automatically result in a termination. Either party may terminate the Agreement if:

(a) the other party commits a Material Breach; or

(b) the terminating party obtains Consent from the other party.

**Section 6.02 Borrower's Remedies.** If the Borrower terminates this Agreement under Section 5.01(b), the Borrower shall:

(a) give the Lender Notice THIRTY (30) business days in advance of termination; and

5

(b) the Borrower shall cause the Liquidated Damages to be wired to the Lender's Account within SIXTY (60) business days of termination.

**Section 6.03 Lender's Remedies.**

(a) If the Lender terminates this Agreement under Section 5.01(a), the Borrower shall cause ONE-HUNDRED-AND-FIFTY THOUSAND DOLLARS AND NO CENTS ($150,000.00) to be wired to the Lender's Account within SIXTY (60) business days of termination.

(b) If the Lender terminates this Agreement under Section 5.01(b), the Lender shall:

   (i) give the Borrower Notice THIRTY (30) business days in advance of termination; and

   (ii) the Borrower shall cause ONE-HUNDRED-AND-FIFTY THOUSAND DOLLARS AND NO CENTS ($150,000.00) to be wired to the Lender's Account within SIXTY (60) business days of termination.

### Article VII. Liquidation

**Section 7.01 Liquidated Damages.** The parties agree that the actual damages resulting from a breach or termination are difficult to count and they intend to agree on the Liquidated Damages for a breach. The Liquidated Damages FOUR-HUNDRED THOUSAND AND NO CENTS ($400,000.00) (the "Liquidated Damages").

### Article VIII. General Provisions

**Section 8.01 Execution.** To evidence the parties' agreement to this Agreement, each party has executed this Agreement on the date stated beneath that party's name.

**Exhibit D**

6

**Section 8.02 Governing Law.** Without regard to the conflict of laws principle, this Agreement shall be governed in accordance with the laws of the State of New York.

**Section 8.03 Notice.**

(a) **Generality.** All notice, request, demand, and other communication (each a "Notice") shall be given in writing and use one of the following methods of delivery, each of which for purposes of this Agreement is a writing:

  (i) personal delivery;

  (ii) registered or certified mail;

  (iii) e-mail; or

  (iv) text message.

(b) **Addresses.** Any party giving Notice shall address the Notice to the appropriate address listed below or to another address as designated by a party in a Notice pursuant to this Section:

  (i) Notices sent to the Borrower shall be sent to:
    Eve Aron
    510 S. Sparks St.
    Burbank, CA 91506
    evearon1@gmail.com
    617) 835-1084

  (ii) Notices sent to the Lender shall be sent to:
    Christopher Samuel

**Exhibit D**

7

282 E 35th St

Brooklyn, NY 11203

_____ e-mail

_____ cell phone no.

**Section 8.04 Attorneys' Fees.** If either party sues to enforce this Agreement, the Lender in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding from the Borrower.

**Section 8.05 Severability.** If any provision of this Agreement is illegal or unenforceable, that provision is severed from this Agreement and the other provisions remain in force, if the Essential Provisions of this Agreement for each party remain legal and enforceable.

**Section 8.06 Merger.** This Agreement states the full agreement between the parties and supersedes all prior negotiations and agreements.

**Section 8.07 Modifications.** Any modifications of or amendments to the terms herein shall be agreed upon and made in writing by all of the parties.

**Section 8.08 Assignment.** In the case of the Borrower's death, the Borrower shall assign this Agreement to the Assignee.

[Remainder of page intentionally left blank; signature page to follow.]

**Exhibit D**

8

**Lender**

By:_____

Christopher Samuel

Dated: \_\_\_\_\_3/28/19_____

**Borrower**

By:_____

Eve Aron

Dated: _____ 03/28/19

9

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of the foregoing motion to enforce settlement agreement, with exhibits A, B, C, D, by email on the Defendant, addressed as follows:

Evearon1@gmail.com
Djhoffman@Djhoffmanlaw.com

Dated: New York, NY
May 24, 2022

/s/Christopher Samuel