UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
CHRISTOPHER SAMUEL,

                Plaintiff,

    -against-

EVE ARON,

                Defendant.
---------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19-CV-5229 (MKB) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On September 12, 2019, Christopher Samuel ("Plaintiff") initiated this action against Eve Aron ("Defendant"). (*See* Complaint, ECF No. 1.) Plaintiff alleges that Defendant fraudulently induced him to provide money as an investment opportunity in Defendant's horse training business. (*Id.; see also* Amended Complaint ("Am. Compl."), ECF No. 20.) Presently before the Court is Plaintiff's motion to enforce settlement. (May 24, 2022 Mot. to Enforce Settlement ("Pl.'s Mot."), ECF No. 41.) For the reasons discussed herein, the Court respectfully recommends that Plaintiff's motion to enforce settlement be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

On July 7, 2021, the case was referred to mediation and on September 17, 2021, Plaintiff filed a letter requesting a conference because "everything requested of defendant has not been provided to the mediator." (July 7, 2021 ECF Order Referring Case to Mediation; Pl.'s Sept. 17, 2021 Letter, ECF No. 32.) The Court held a conference on October 7, 2021, and again referred the case to the EDNY Mediation Panel at the parties' request. (Oct. 7, 2021 ECF Minute Entry and Order; Oct. 7, 2021 ECF Order

---

[1] This report and recommendation assumes familiarity with the underlying facts and relevant procedural history.

Referring Case to Mediation.) On November 16, 2021, a report of mediation was filed indicating that the case was settled. (Nov. 16, 2021 Report of Mediation Settled.) During the mediation, the parties agreed to settle the claims for $45,000 and the parties later represented to the Court that Defendant's payment was due by January 3, 2022.[2] (May 9, 2022 Transcript ("Tr."), ECF No. 45, at 6:19–7:1, 7:19–8:4; Dec. 13, 2021 Joint Status Report, ECF No. 34.)

On December 2, 2021, Plaintiff, who is proceeding *pro se*, filed a letter requesting another conference with the Court, in part to understand the "next steps in case the agreed-on money isn't received." (Pl.'s Dec. 2, 2021 Letter, ECF No. 33.) In response, the Court directed the parties to file a stipulation of dismissal or a joint status report by December 17, 2021. (Dec. 3, 2021 ECF Order.) On December 13, 2021, the parties informed the Court that the mediation successfully resulted in a settlement but that "the agreement does provide the defendant until January 3, 2022[,] to make the payment necessary to implement the settlement agreement." (Dec. 13, 2021 Joint Status Report, ECF No. 34.)

On January 4, 2022, Plaintiff filed a letter informing the Court that Defendant had not paid the settlement the parties had agreed on by January 3, 2022. (Pl.'s Jan. 4, 2022 Letter, ECF No. 35.) On January 18, 2022, defense counsel renewed a previous motion to withdraw as counsel. (Jan. 18, 2022 Mot. to Withdraw, ECF No. 36, *see also* Apr. 6, 2021 Mot. to Withdraw, ECF No. 29.) In response, the Court scheduled a status conference for February 8, 2022, and directed Defendant Eve Aron to personally appear at the conference. (Jan. 19, 2022 ECF Scheduling Order.) The Court also directed defense counsel to provide a copy of the scheduling order to Defendant. (*Id.*)

---

[2] As described below, Plaintiff received Defendant's check for $45,000 on April 19, 2022, but the check bounced. (Pl.'s Mot., ECF No. 41, Ex. C; *see also* Pl.'s Decl., ECF No. 41, ¶ 4.)

2

Ms. Aron did not appear at the February 8, 2022 status conference. (Feb. 8, 2022 ECF Minute Entry and Order.) At the conference, Plaintiff and defense counsel provided an update regarding the status of the settlement and defense counsel's motion to withdraw; the Court reserved decision on defense counsel's motion. (*Id.*) The Court also scheduled another status conference for March 8, 2022, and again directed Defendant Aron to personally appear at the conference. (*Id.*) The parties were directed to serve Ms. Aron with notice of the March 8, 2022 status conference at any address they had and electronically. (*Id.*) Defense counsel was also directed to call Ms. Aron and inform her of the March 8, 2022 status conference and the Court's order directing her to appear at the conference. (*Id.*) On March 8, 2022, defense counsel filed a letter and attached a FedEx confirmation demonstrating that he had "served a copy of the Court's order of February 8, 2022[,] on Ms. Aron at the only address that [he] [had] for her." (Mar. 8, 2022 Def. Counsel Letter, ECF No. 37; *see also* FedEx Tracking Confirmation, ECF No. 37-1.)

Defendant did not appear at the March 8, 2022 status conference. (Mar. 8, 2022 ECF Minute Entry and Order.) At the conference, the parties again provided a status update regarding the settlement, and the Court denied defense counsel's motion to withdraw without prejudice to refile a motion that conformed with E.D.N.Y. Local Rule 1.4.[3] (*Id.*) The Court also scheduled another status conference for May 9, 2022, and again directed Defendant Aron to personally appear at the conference. (*Id.*) The parties were directed to serve Ms. Aron with notice of the May 9, 2022 status conference at any

---

[3] Defense counsel's second motion to withdraw was deficient under E.D.N.Y. Local Rule 1.4 because it did not include an affidavit showing reasons for withdrawal and whether defense counsel was asserting a retaining or charging lien, nor did it include an affirmation of service of the motion on Defendant. (*See* Jan. 18, 2022 Mot. to Withdraw, ECF No. 36; Mar. 8, 2022 ECF Minute Entry and Order.) *See* E.D.N.Y. Local Civil Rule 1.4.

3

address they had and electronically. (*Id.*) Defense counsel was also directed to call Ms. Aron and inform her of the May 9, 2022 status conference and the Court's order directing her to appear at the conference. (*Id.*) On April 19, 2022, more than three months after the agreed upon deadline for Defendant to pay Plaintiff, Plaintiff received a check for $45,000 from Defendant, "which subsequently bounced due to insufficient funds." (Pl.'s Decl., ECF No. 41, ¶ 4; *see also* Pl.'s Mot., ECF No. 41, Ex. C.)

Defendant, yet again, failed to appear at the May 9, 2022 status conference. (May 9, 2022 ECF Minute Entry and Order.) At the conference, Plaintiff represented that he intended to file a motion to enforce the parties' settlement. (*Id.*) Accordingly, the Court inquired of the parties as to the terms of the settlement and set a deadline for the instant motion. (*Id.*) The Court also directed Plaintiff "to serve the motion on Defendant using any methods available and to file an affirmation of service in support of the motion." (*Id.*) Additionally, the Court informed defense counsel that if he chose to re-file his motion to withdraw, he was directed "to file his motion to withdraw in conformity with EDNY Local Rule 1.4, including an affidavit and proof of service, by 5/13/2022." (*Id.*) Defense counsel was also directed to serve Defendant with the Minute Entry and Order "using any and all methods available." (*Id.*) Thereafter, Plaintiff filed a motion for default judgment on May 12, 2022, which he then sought to withdraw upon filing a motion to enforce settlement on May 24, 2022. (Mot. for Default J., ECF No. 38; Pl.'s Mot., ECF No. 41.)

At the May 9, 2022 status conference, defense counsel represented that, in connection with the mediation in this case, the mediator had written the following email to the parties, which memorialized the key terms of the settlement:

> The parties intending to be bound agree as follows: In full settlement of the claims in the referenced litigation, Aron shall pay Samuel $45,000 within 30 days of today. The parties shall enter a stipulation of dismissal

4

> with prejudice upon Samuel's receipt of the payment. The parties shall
> bear their own costs of fees. The parties shall confirm their agreement by
> (indiscernible) replying to this email – replying to all to this email
> confirmed.

(Tr., ECF No. 45, at 7:20–8:2.) Defense counsel further represented that he had written back to the mediator and confirmed on behalf of his client. (*Id.* at 8:3–4.)

As noted above, Plaintiff now moves for an order to enforce the settlement. (*See id.* at 7:20–8:2; Pl.'s Mot., ECF No. 41.) This motion is unopposed by Defendant, who has not been in contact with her counsel and who has continuously failed to appear following the execution of the settlement agreement, which ultimately led to this Court's granting defense counsel's motion to withdraw as her attorney. (Order Granting Mot. for Withdrawal, ECF No. 43.)

On June 17, 2022, Chief Judge Margo K. Brodie referred Plaintiff's motion to enforce settlement to the undersigned. For the reasons discussed herein, the Court respectfully recommends that Plaintiff's motion to enforce settlement be granted.

## DISCUSSION

### I. Legal Standards

"'It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law.'" *Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 150 (2d Cir. 2022) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)) (internal quotation marks omitted in *Murphy*); *see also Meeting & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (per curiam) (citing *J. Kahn & Co. v. Clark*, 178 F.2d 111 (5th Cir. 1949); *E.L. "Bunch" Hullet, Inc. v. Universal C.I.T. Credit Corp.* (*In re "Bunch" Hullet, Inc.*), 259 F.2d 685, 687–88 (10th Cir. 1958); *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967); *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969); *Beirne v. Fitch Sanitarium, Inc.*, 167 F. Supp.

652, 654 (S.D.N.Y. 1958)). "Whether a binding agreement exists is a question of law." *Murphy*, 32 F.4th at 150. "The ultimate issue . . . 'is the intent of the parties: whether the parties intended to be bound, and if so, to what extent.'" *Vacold LLC v. Cerami*, 545 F.3d 114, 125 (2d Cir. 2008) (quoting *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548–49 (2d Cir. 1998)).[4]

In New York, a contract is generally enforceable when there is "'an offer, acceptance, consideration, mutual assent[,] and intent to be bound.'" *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (quoting *Louros v. Cyr*, 175 F. Supp. 2d 497, 511 n.5 (S.D.N.Y. 2001)). To form a binding contract, the parties must agree on all essential terms, which are those terms that require negotiation. *See Murphy,* 32 F.4th at 150. There must be "a meeting of the minds" on the material terms for a court to enforce a settlement. *Raghavendra v. Trs. of Columbia Univ.*, 686 F. Supp. 2d 332, 340 (S.D.N.Y. 2010), *aff'd in relevant part, vacated and remanded on other grounds*, 434 F. App'x 31 (2d Cir. 2011). Once these terms have been agreed to, the parties are bound and must adhere to the agreement. *Id.* The party seeking to enforce a purported settlement agreement bears the burden of proving that a binding and enforceable agreement exists. *See Benicorp Ins. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006).

In *Murphy*, the Second Circuit recently compared two types of preliminary contracts that are recognized under New York law, observing that:

> The first (Type I) "occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues

---

[4] It is worth noting that courts' "authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986). The court's authority to enforce settlement agreements is both "essential to the efficient use of judicial resources [and] also preserves the integrity of settlements as a meaningful way to resolve legal disputes." *Brown v Nationscredit Com.*, No. 99-CV-592 (EBB), 2000 WL 888507, at *1 (D. Conn. June 23, 2000).

> perceived to require negotiation." This kind of agreement is preliminary "only in the sense that the parties desire a more elaborate formalization of the agreement," which, although not necessary, is desirable. The second (Type II) "is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated."

*Murphy*, 32 F.4th at 150 (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)) (citations omitted). In the context of settlement agreements reached at mediation, the court in *Murphy* opined that:

> In all but the most unusual circumstances, mediation agreements that include express language indicating that the parties have reached agreement on all material terms are presumptively Type I agreements — unless the parties explicitly reserve the right not to be bound by the mediation agreement's terms until a final agreement is drafted and signed.

*Id.* at 153. In *Murphy* itself, the parties had signed a written agreement at mediation, a situation that is distinguishable from a scenario in which there are questions about "whether the parties intended to be bound" at all. *Id.* at 151 (quotation marks omitted). In the latter scenario, the operative inquiry "is what kind of agreement did the parties make." *Id.*

To answer that question, and determine whether a preliminary agreement was reached and is binding, the Second Circuit uses the four factors set out in *Winston v. Mediafare Entertainment Corp.*:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985); *see Murphy*, 32 F.4th at 151.

7

## II. Analysis

Here, the Court is faced with an agreement that was reduced to writing by the mediator via email, which has been confirmed by Plaintiff and defense counsel, but not formally signed by the parties. The situation is somewhat similar to that in *Teachers Insurance and Annuity Association of America*, where the court categorized an agreement by which "the parties have reached complete agreement (including agreement to be bound) on all the issues perceived to require negotiation" as a Type I agreement. *See Teachers Ins. & Annuity Ass'n of Am.*, 670 F. Supp. at 498.

Even though the agreement in this case was not formalized in a signed settlement agreement, the following facts clearly evince the parties' intent to be bound by the agreement and indicate that the parties intended for the agreement to be final: (1) both parties agreed to be bound at the mediation to a full settlement of the claims for $45,000 and later agreed that Defendant's payment of $45,000 was due by January 3, 2022 (Tr., ECF No. 45, at 6:19–7:1, 7:19–8:4; Dec. 13, 2021 Joint Status Report, ECF No. 34); (2) both parties informed the Court that the mediation successfully resulted in a settlement agreement (Dec. 13, 2021 Joint Status Report, ECF No. 34); (3) Plaintiff received a check, though faulty, from Defendant for $45,000, the amount which Plaintiff has stated that he is owed (*see* Pl.'s Mot., ECF No. 41, Ex. C; Pl.'s Decl., ECF No. 41, ¶ 4; Tr., ECF No. 45, at 6:19–7:1, 7:19–8:4); and (4) when Plaintiff represented to the Court that the parties agreed on a settlement of $45,000, defense counsel confirmed that was accurate (Tr., ECF No. 45, at 6:19–7:1, 7:19–8:4). *See Murphy*, 32 F.4th at 151. There is no evidence in the record suggesting that the parties attempted to reserve the right to be bound or that additional terms required negotiation. Accordingly, the Court finds the agreement here to be akin to a Type I agreement.

In addition, all of the *Winston* factors weigh in favor of concluding that an enforceable settlement agreement exists. Starting with the first *Winston* factor, Defendant has made no attempt to deny that a valid and binding settlement agreement was reached or to argue that there was any reservation of the right to be bound before the agreement was reduced to writing. Rather, she has simply stopped complying with court orders and has refused to participate in the case after the mediation. (*See* Feb. 8, 2022 ECF Minute Entry and Order; Mar. 8, 2022 ECF Minute Entry and Order; May 9, 2022 ECF Minute Entry and Order.) While the agreement reached at the mediation may not have been reduced to a formal writing, it is clear from the joint status report following the mediation and the parties' subsequent actions that they intended their mediation agreement to be a binding contract and that there was a mutual understanding reached between the parties as to the bargain. (*See* Dec. 13, 2021 Joint Status Report, ECF No. 34.) Indeed, as noted above, defense counsel indicated in the parties' joint status report to the Court following mediation that once the settlement amount was paid, Plaintiff would release all claims with prejudice. (*Id.*) There was no indication that the parties did not want to be bound by the settlement agreement or that they were expressly reserving the right not to be bound by the settlement agreement without additional written instruments. (*See id.*) The absence of an express reservation is a strong indication of a party's intent to be bound by a preliminary agreement. *See Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 424 (S.D.N.Y. 2012).[5]

---

[5] The Court notes that a determination as to whether Defendant Aron intended to be bound by the settlement agreement does not turn on whether she personally confirmed the settlement or appeared at subsequent proceedings in the case. The Second Circuit has held that an attorney-client relationship creates a presumption that an attorney has the authority to enter into a settlement, and there is no evidence here that would indicate that defense counsel did not have such valid authority. *See In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996). Moreover, Ms. Aron's own actions of sending Plaintiff a check in the amount of $45,000 confirm defense counsel's representations to the Court.

Furthermore, the second, third, and fourth *Winston* factors all weigh in favor of Plaintiff here. Defendant satisfied the second factor, partial performance of the preliminary agreement, by attempting to pay the full settlement amount via the check sent to Plaintiff, dated April 7, 2022. (Pl.'s Mot., ECF No. 41, Ex. C; *see also* Pl.'s Decl., ECF No. 41, ¶ 4.) Although Defendant's check bounced, her actions serve as very strong evidence of a meeting of the minds and was clearly an attempt to fulfill the terms of the settlement. (Pl.'s Mot., ECF No. 41, Ex. C; *see also* Pl.'s Decl., ECF No. 41, ¶ 4.) The third *Winston* factor has also been met because there were no additional open items to negotiate: Plaintiff agreed to release all claims with prejudice upon receipt of Defendant's payment. (*See* Dec. 13, 2021 Joint Status Report, ECF No. 34.) The fourth and final *Winston* factor, whether this agreement would typically be memorialized in writing, also supports a finding for Plaintiff. A relatively simple contractual settlement by which the parties have "agreed to terminate the litigation and settle for a modest amount" is often not memorialized in writing. *Geneva Lab'ys Ltd. v. Nike W. African Import and Export, Inc.*, No. 19-CV-4419 (EK) (RER), 2022 WL 673257, at *10 (E.D.N.Y. Mar. 7, 2022). For all of these reasons, the *Winston* factors support the conclusion that the parties' settlement agreement is a binding contract.

Finally, although Defendant is not proposing one, there is no real argument to be made that the settlement agreement here was not the parties' final agreement. This case is thus similar to *Guang Hui Zhu v. Sushi Time 2nd Avenue, Inc.*, in which an employer reached a settlement on a Fair Labor Standards Act claim, under which the employee agreed to release all complaints in return for payment. No. 14-CV-4326 (CM), 2018 WL 2538226, at *1 (S.D.N.Y. May 21, 2018). There, as here, the defendant's check bounced and the defendant stopped responding to the plaintiff and court. *Id.* The court in *Zhu* appropriately entered judgment against the defendant. *Id.* at *2. When defendants

become non-compliant with court orders after entering into a settlement agreement, entry of judgment may be the only remedy. It is here.

## CONCLUSION

For the reasons discussed above, the Court respectfully recommends that Plaintiff's motion to enforce settlement (ECF No. 41) be granted, and that judgment be entered in favor of Plaintiff consisting of (1) a judgment of $45,000; (2) pre-judgment interest at nine percent per annum pursuant to N.Y. C.P.L.R. §§ 5001(a)–(b) and 5004, to be calculated from January 4, 2022, through the date of judgment;[6] and (3) post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), to be calculated from the date judgment is entered until the date of payment.

\* \* \* \* \*

---

[6] A party is entitled to pre-judgment interest "upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a); *see also Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015); *Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501 (MKB), 2016 WL 1255726, at *7 (E.D.N.Y. Mar. 28, 2016). "Section 5004 sets the rate of prejudgment interest at nine percent." *Cont'l Cas. Co.*, 2016 WL 1255726, at *7 (citing N.Y. C.P.L.R. § 5004). Interest due "shall be computed from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b); *see also Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (citations omitted) ("In New York, a breach of contract cause of action accrues at the time of the breach."). As discussed above, the parties informed the Court that "the agreement does provide the defendant until January 3, 2022[,] to make the payment necessary to implement the settlement agreement." (Dec. 13, 2021 Joint Status Report, ECF No. 34.) Accordingly, this Court, in its discretion, recommends that pre-judgment interest be calculated from January 4, 2022, the approximate date marking the onset of Defendant's breach of contract, through the date of the entry of final judgment, and that it be calculated at the rate of nine percent per annum on the damages award ($45,000). *See MRC Indus. Inc. v. Global Therapy Sys., LLC*, No. 06-CV-3633 (JS) (WDW), 2009 WL 2461106, at *4 (E.D.N.Y. Aug. 7, 2009).

Any objections to this report and recommendation must be filed within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[] [judge's] decision").

Plaintiff is directed to serve a copy of this Order on Defendant Aron by certified mail and to file proof of service with the Court no later than **September 21, 2022**.

**SO ORDERED.**

Dated: Brooklyn, New York
September 14, 2022

*Taryn A. Merkl*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE